## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| COOK PRODUCTIONS LLC | ) | |
| | ) | |
| Plaintiff, | ) | Case No.:  3:16-cv-3045 |
| | ) | |
| v. | ) | |
| | ) | |
| Vanessa Hughes, et al. | ) | Judge Jack Zouhary |
| | ) | Magistrate Judge Knepp |
| | ) | |
| Defendants. | ) | |

---

### PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST
### JOHATHAN TONEY, AND KRYSTAL RAMSEY

---

Now comes the Plaintiff, COOK PRODUCTIONS LLC., and Pursuant to Rule 55(b)(2),

Federal Rules of Civil Procedure, and the Clerk's August 18, 2017 Entry of default against

Defendants Jonathan Toney and Krystal Ramsey (Doc # 38), moves this Court for an Order of

Default Judgement against said Defendants.

Dated: August 25, 2017

Respectfully Submitted,

Timothy A. Shimko (0006736)
Shimko Law Offices LLC
Box 6985
159 Crocker Park Blvd. Suite 400
Westlake, Ohio 44145
Tel. (216) 241-8300
Fax (216) 539-2015
tas@shimkolaw.com

<u>MEMORANDUM IN SUPPORT</u>

## I. Introduction

Using the BitTorrent protocol, Defendants illegally downloaded Plaintiff's copyrighted movie, *"Mr. Church"*. It is undisputed that Defendants' infringement was willful and intentional. Worse, because of the way the BitTorrent protocol works, Defendants' infringement is likely ongoing. Defendants' actions-along with the actions of many others engaged in illegal file sharing-are taking a significant toll on the nation's movie industry. According to Forbes magazine:

> Many think, naively, that studios cannot be hurt too much [by BitTorrent], because after all, you hear mostly about the movies that make hundreds of millions of dollars. But the reality for many filmmakers is that they often live on the edge, seeking financing to produce quality content, and enduring high uncertainty about whether they will be able to pay off debt and have any profit left. **Given the high fixed cost of producing a quality movie, losses from piracy can be the difference between making a profit or not.** Avi Lerner, producer of Expendables 3, paints a gloomy picture: 'If **piracy continues to be rampant like this, then in four to five years it will be the end of the independent film business as we know it and the studios will be making way less films then they do now.'**

Nelson Granados, <u>How Piracy Is Still Hurting The Filmmakers And Artists You Admire,</u> *Forbes,* December 3, 2015, http://www.forbes.com/sites/_nelsongranados/2015/12/_03/how-piracy-hurts-the-filmmakers-and-artists-you-admire/#60__42f49871b7 (emphasis added).[1] Lerner had a reason to be pessimistic: his movie, *Expendables 3,* lost an estimated $100 million due to copyright infringement-which included over 40 million illegal downloads using BitTorrent websites. *Id.*

Movie-makers are not the only victims: the public also loses. "[A]long with billions of dollars each year, digital theft has cost the U.S. entertainment industry countless jobs."

---

[1] Copies of all periodicals cited herein are attached as Exhibit 1.

Department of Professional Employee's Fact Sheet, Intellectual Property Theft: A Threat to U.S. Workers, Industries, and Our Economy, November 2015, http://dpeaflcio.org/programs-publications/issue-fact-sheets/intellectual-property-theft-a-threat-to-u-s-workers-industries-and-our-economy/. As one journalist explained,

> The motion picture, television, theater, and music industries are vital sectors of the U.S. economy. They employ millions of U.S. workers, generate revenues for local businesses and communities, and are among the all-too-few U.S. industries that generate substantial trade surpluses in the midst of growing U.S. trade deficits. The theft of copyrighted films, television shows, theatrical productions, and music costs the U.S. entertainment industries billions of dollars in revenue each year. ***That loss of revenue hits directly at bottom-line profits and those middle-class workers who earn their living in these industries.*** *Id.*

The public policy concerns that the Copyright Act was designed to protect are also harmed. The primary objective of the Copyright Act is not simply to reward the labor of authors "but '[t]o promote the Progress of Science and useful Arts.' To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 349-50, 111 S. Ct. 1282, 1290, 113 L. Ed. 2d 358 (1991) (citations omitted). In other words, while the immediate effect of copyright law is to "secure a fair return for an author's creative labor," the ultimate aim is to "stimulate artistic creativity for the general public good." *Fogerty v. Fantasy,* Inc., 510 U.S. 517, 526-27, 114 S. Ct. 1023, 1029, 127 L. Ed. 2d 455 (1994) (emphasis added). It follows, then, that ignoring online copyright infringement will ultimately lead to a decline in the production of these creative works-particularly independent films that rarely can obtain financing. This in tum will hinder the Copyright Act's stated goal: promoting broad public availability of literature, music, and movies. The only way to curtail rampant and widespread copyright infringement is to impose penalties significant enough to deter would-be infringers

from participating in online, peer-to-peer theft schemes.

For these reasons, Plaintiff respectfully requests that the Court enter judgment in its favor against Defendants, and award damages in the amount of $15,000.00 against each Defendant pursuant to 17 U.S.C. § 504(c) and attorneys' fees in the amount of $2,350.00.[2] Additionally, Plaintiff requests that the Court grant its request for injunctive relief, permanently barring Defendants from directly and contributorily infringing Plaintiffs copyright in the motion picture *Mr. Church*. The Court should also issue an Order requiring Defendants to destroy all illegal copies of the copyrighted movie, including electronic files and copies transferred onto any physical medium or device in Defendants' possession, custody, or control. Finally, Plaintiff requests that the Court order Defendants to delete the software used to make or distribute copies of Plaintiff's copyrighted material or to exchange unlicensed content using the BitTorrent protocol, and to refrain from knowingly and willfully using BitTorrent or the Internet for copying or downloading content in violation of U.S. copyright law in the future.

## II. FACTUAL HISTORY

Plaintiff COOK PRODUCTIONS LLC is the owner of the copyright and/or the pertinent exclusive rights under copyright in the United States for the motion picture *Mr. Church* (the "Movie") under registration number PA 2-002-851. (Amended Complaint, Dkt. #22 ¶¶ 7-9, Ex. 1). Plaintiff filed this action after discovering that Defendants Jonathan Toney and Krystal Ramsey and other individuals had illegally downloaded and made the Movie available to others using the BitTorrent protocol. (*Id. ¶¶12, 35)* BitTorrent is an interactive "peer-to-peer" ("P2P") file transfer technology protocol whereby users can: (a) make media files (including entire movies) stored on each user's computer available for copying by other users or peers; (b) search

---

[2] See, Declaration of Timothy A. Shimko, attached as Exhibit 2.

for files that are stored on other users' computers; and (c) transfer exact copies of those files from one computer to another via the internet. *(Id.* ¶ **32**).

Defendants, without Plaintiff's authorization or license, intentionally and knowingly used the BitTorrent protocol to download and distribute the Movie. *(Id.* ¶ 47). First, common sense dictates that Defendants knew they were illegally obtaining copyrighted material. Like almost any motion picture, *"Mr. Church"* contains a copyright notice at the very beginning of the film stating that it is protected by copyright laws and infringement is punishable. *(Id.* ¶ 11). Additionally, the Movie is obviously the costly professional work of a creative business-it was a major production with notable actors, a national advertising campaign and a significant opening release in hundreds of screens-putting Defendants on notice of its copyrighted status. *(Id.* ¶ 6). Second, obtaining the Movie required Defendants to take several deliberate steps in order to obtain a viewable version. Defendants first had to knowingly and intentionally download and install the BitTorrent "client" application. Because the "client" application cannot typically search for torrent files on its own, Defendants also had to seek out BitTorrent sites using a standard web browser Defendants then had to log into one of many BitTorrent client repositories, which are well-known among users for their large index of copyrighted movies, television shows, software, and adult videos. And after logging in, Defendants had to deliberately: (1) obtain a torrent file from the index; (2) load it into a computer program designed to read such files and download the copyrighted material; and (3) enter into a BitTorrent swarm particular to Plaintiff's Movie, all with the goal of downloading (and therefore reproducing and distributing) the copyrighted material. *(Id.* ¶¶ 29-34). Finally, Defendants were aware that they did not pay for the copyrighted material, and did not take any steps to obtain a valid copy or license.

### III.  Procedural History

After discovering Defendants' infringing conduct, Plaintiff commenced this action by filing its Complaint on December 21, 2016 against 10 Doe individuals. (Dkt. #1). Thereafter, Plaintiff was able to ascertain the true identity of many of the individuals who illegally

downloaded and distributed the Movie by subpoenaing Defendants' Internet Service Providers. Plaintiff's Complaint was then amended to specifically identify the infringers. (Amended Complaint, Dkt. #22) A copy of the summons and amended complaint was served on Defendants Toney and Ramsey by the clerk and returned executed on June 19, 2017 and June 23 respectively, making Defendants' answers due July 11, 2017 and July 14, 2017. See Fed. R. Civ. P. 12(a)(l)(A). When Defendants failed to appear, plead, or otherwise defend, Plaintiff filed a Rule 55(a) request for the entry of default on July 27, 2017, which was granted by the Court. (Dkt. #38).

**IV. Plaintiff is entitled to a default judgment, including an award of statutory damages.**

Despite being served with a copy of the Amended Complaint, Defendants have failed to appear. As a result, Plaintiff requested and received an entry of default. (Dkt. #38.) And because Defendants have chosen to default instead of defending, Defendants have admitted the truth of the allegations asserted in the Amended Complaint. Fed.R.Civ.P. 8(b)(6); *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). Plaintiff now respectfully requests that this Court enter a default judgment against Defendants.

When evaluating whether to grant a judgment by default, courts consider a number of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Twentieth Century Fox Film Corp. v. Streeter,* 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006) (granting a copyright holder default judgment and awarding statutory damages of $6,000.00, attorneys' fees, and costs). *Russell v. City of Farmington Hills,* No. 01-2212, 2002 WL 818304, at *2 (6th Cir. April 29, 2002), *citing Eitel v. McCool,* 782 F. 2d 1470, 1472 (9th Cir 1986). All of these factors support the conclusion that Plaintiff is entitled to a default judgment.

### 1. The possibility of prejudice to Plaintiff

Plaintiff would certainly be prejudiced if the Court declines to enter default judgment, for it would leave Plaintiff without any remedy against Defendants, who have failed to even show up and contest this dispute. "If Plaintiff's motion for default judgment is not granted, Plaintiff will likely be without other recourse for recovery." *PepsiCo, Inc. v. California Sec. Cans,* 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Despite the fact that Defendants, by failing to appear, do not deny that Plaintiff is entitled to an award of statutory damages, attorneys' fees, costs, and a permanent injunction, if this Court refuses to enter a default judgment against Defendants, Plaintiff would be left unable to seek damages or even to prevent Defendants from brazenly continuing to infringe Plaintiff's copyright. Indeed, a refusal would entirely frustrate both the Copyright Act and the civil justice system.

### 2. & 3. The merits of Plaintiff's substantive claim and the sufficiency of the Amended Complaint

Plaintiff has adequately pled its claim for copyright infringement. A plaintiff asserting a copyright infringement claim must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 361 (1991); *Lexmark Intern. v. Static Control Components,* 387 F. 3d 522, 534 (6th Cir. 2004). In its Third Amended Complaint, Plaintiff alleged that it owns the copyright for the Movie and attached a valid Certificate of Copyright

Registration issued by the Register of Copyrights. (Dkt. #51 at ¶ 7; Ex. 51-1.) "Registration is prima facie evidence of the validity of a copyright." *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 488-89 (9th Cir. 2000), citing 17 U.S.C. § 410(c) (1994) *Lexmark,* 387 F. 3d at 534. Moreover, because the factual allegations of the Amended Complaint are deemed true, Plaintiff has conclusively established that Defendants infringed upon Plaintiff's copyright and that Defendants' infringement was both knowing and willful. (Dkt. #22). Attached as Exhibits 4(A)&(B) and 5(A)&(B) to the motion are business records purchased from MaverickEye in the investigation of the case which reflect the amount of illegal downloading in which the respective Defendants have engaged. Exhibit 4(A) establishes that along with this title, Jonathan Toney has downloaded and uploaded over 290 other copyrighted works during the prior year; Exhibit 4(B) shows the number of times MaverickEye observed Jonathan Toney accessing *"Mr. Church"* Exhibit 5(A) shows Krystal Ramsey downloading and sharing 290 copyrighted titles, and Exhibit 5(B) establishes the number of captures of this film. All are copies of copyrighted works that were observed being shared by Defendants' IP addresses, including file separate copies of *"Mr. Church"* (Exhibits 4 and 5; Exhibit 2, Declaration of Timothy A. Shimko).

**4. The sum of money at stake in the action**

The Copyright Act provides that "an infringer of copyright is liable for . . . . (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a)(2). In the Digital Theft Deterrence Act of 1999, Congress amended the Copyright Act to ***increase*** the penalties for copyright infringement in response to rampant and blatant online infringement:

> Many computer users are either ignorant that copyright laws apply to Internet activity, or they simply believe that they will not be caught or prosecuted for their conduct. Also, many infringers do not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright owner puts them on notice that their actions constitute infringement and that they should stop the activity or face legal actions. In light of this disturbing trend, it is manifest that

Congress respond appropriately with updated penalties to dissuade such conduct.

H. R. Rep. No. 106-216 at 3 (1999). For ***unintentional*** infringement, 17 U.S.C. § 504(c) provides that "the copyright owner may. . . recover ...  an award of statutory damages for all infringements involved in the action, with respect to any one work . . .  a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(l). But upon finding that the infringement was ***willful,*** the Court may "increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

Given the legislative history, Plaintiff's request for a statutory damage[3] award of $15,000 per Defendant is well within the bounds permitted by the Copyright Act. Indeed, because Defendants admitted that the infringement was intentional, an even more substantial statutory award could be justified. Because of Defendants' use of the BitTorrent protocol, the infringement cannot be limited to a single act damaging Plaintiff. Instead, Defendants have likely contributed to-and continue to contribute to-other individuals infringing on Plaintiff's Movie, justifying a larger award.[4] Moreover, Defendants must face a penalty significant enough to deter others from participating in BitTorrent's peer-to-peer theft scheme. If individual infringers are not held accountable for their wrongful conduct, copyright infringement will continue to run rampant on the internet and, "[l]ong term, movies and TV and other content simply won't be created in the first place. ***One may think an individual act of piracy doesn't matter, but*** *if* ***that becomes a way of life then the value of intellectual property becomes eroded, shows like Downton Abbey won't get made."*** Movie piracy: threat to the future of films intensifies, The Guardian, July 17, 2014,

---

[3] Because Plaintiff seeks an award of statutory damages, Plaintiff is not required to prove actual damages; instead, it may elect to seek statutory damages "regardless of the adequacy of the evidence offered as to [its] actual damages and the amount of Defendant's profits." *Columbia Pictures Television, Inc. v. Krypton Broad of Birmingham, Inc.,* 259 F.3d 1186, 1194(9th Cir. 2001) cert. denied, 534 U.S. 1127 (2002)

[4] For additional analysis on the likelihood that Defendants have contributed to the continued infringement of Plaintiff's copyrighted material, see Section IV.

https://www.theguardian.com/film/2014/juVl7/digital-piracy-film-online-counterfeit-dvds.

Despite this Court's authority to award statutory damages of up to $150,000 for Defendants' willful infringement, Plaintiff seeks only $15,000 from each in statutory damages. This amount is less than or comparable to awards issued by other courts in similar circumstances. *See, e.g.,; Malibu Media LLC* v. Griggs, 2:14-cv-558, Docket Number 15 (SD Ohio 2015) (Awarding $42,750.00 in statutory damages and $1,582.00 in attorney's fees and costs); *see also Malibu Media v. Julien,* 2013 WL 6178926 at *1 (S.D. VA, 2013) (Awarding $51,750 in statutory damages where, by virtue of entry of default, it had been established that defendant willfully infringed plaintiffs copyright); *Flava Works, Inc. v. Fisher,* 12-CV-1888, Docket Number 20 (N.D. Ill., October 30, 2012) (Lee, J.) (awarding $1,500,000 in statutory damages in addition to attorneys' fees and costs on default); *Cobbler Nevada v. Jakie,* 8:15-cv-2653 -T-27TBM, Docket Number 20 (M.D. FL June 22, 2016) (awarding $15,000 in statutory damages, and $2,437 in costs and fees); *Cobbler Nevada v. Woodward,* 8:15-cv-2652-T-33AEP, Docket Number 25 (M.D. FL June 7, 2016) (H. Covington) (awarding $15,000 in statutory damages, and $3,382 in costs and fees); *The Bicycle Peddler, LLC v. Kovatchev,* 13-CV-7012, Docket No. 35 *N.D. Ill., December 9, 2014) (Darrah, J.) (awarding $10,000 in statutory damages, $9,116.00 in attorneys' fees and $755.78 in costs); *ME2 Productions, Inc. v. Ra Von Burton*, 3:16-cv-2715, Docket No. 38 * N.D. Ohio, July 19, 2017) (Zouhary, J.) (awarding $12,000.00 in statutory damages and $4,000.00 in attorney fees).[5]

Nominal damages in this case would be insufficient because Defendants have caused significant harm to Plaintiff. In addition, an award of $15,000 against each Defendant is not only justified by the admittedly willful nature of Defendants' infringement, but also furthers the

---

[5] Plaintiff has attached the referenced judgments as Exhibit 3.

10

purposes of the Copyright Act by (1) protecting the public's interest in the creation and development of the arts and (2) deterring others from infringing on Plaintiffs copyright. For these reasons, Plaintiffs request for statutory damages is both restrained and appropriate.

**5. The possibility of a dispute concerning the material facts**

There is no possibility of a dispute arising as to any material fact in this case. Because of Defendants' default, this Court must take the factual allegations asserted in the Amended Complaint as true. Fed.R.Civ.P. 8(b)(6); *TeleVideo Sys., Inc. v. Heidenthal, supra,* 826 F.2d at 917-18. Moreover, Defendants have not made any attempt to contest those allegations (or for that matter, even bothered to appear).

**6. Whether the default was due to excusable neglect**

Defendants' default is not the result of excusable neglect. Defendants were put on notice by their ISPs regarding the information subpoena. The Defendants were then served with the Summons and Amended Complaint by certified mail service by the Clerk returned executed on June 19, 2017 and June 23, 2017 (Dkt. Nos. 26 and 27). Defendants were then provided with a copy of the Clerk's Entry of Default. Defendants are also being served with a copy of this motion. Thus, on at least four occasions, Defendants have been provided with notice of this proceeding- and of the risks for failing to appear. Accordingly, Defendants' decisions to neither appear nor defend "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co., Ltd. v. Kuei,* 194 F.Supp.2d 995, 1005 (N.D.Cal.2001) (reasoning that excusable neglect is not present when Defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

**7. The policy considerations**

While it is true that "cases should be decided upon their merits whenever reasonably

possible," Defendants' failure to respond to this lawsuit makes achieving a ruling on the merits entirely unfeasible. *See Pena v. Seguros La Comercial, S.A.,* 770 F.2d 811, 814 (9th Cir. 1985). Accordingly, the only way for this case to reach a resolution of any kind is to award Plaintiff default judgment. Absent a judgment by default, Plaintiff will not be made whole-and has no mechanism to prevent further infringement of its copyright by the Defendants.

In summary, as demonstrated above, all of the factors weigh in favor of granting Plaintiff a default judgment against Defendants.

## V.   Plaintiff is entitled to injunctive relief.

The Court is authorized to grant permanent injunctive relief to prevent or restrain copyright infringement. *See* 17 U.S.C. § 502(a)(2) ("Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or refrain infringement of a copyright.") The Copyright Act further provides that "the court may order the destruction... of all copies ...  found to have been made or used in violation of the copyright owner's exclusive rights ...."17 U.S.C. § 503(b).

Permanent injunctions are commonplace in these cases: "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 520 (9th Cir.1993). Moreover, irreparable harm is ***presumed*** in copyright infringement cases on a showing of success on the merits. *See A & M Records, Inc. v. Napster, Inc.,* 114 F.Supp.2d 896, 925 (N.D.Cal.2000) *reversed in part on other grounds, citing Micro Star v. Formgen Inc.,* 154 F.3d 1107, 1109 (9th Cir.1998); *see also Princeton Univ. Press v. Michigan Document Serv., Inc.,* 99 F.3d 1381, 1392-93 (6th Cir.1996) (holding the weight of authority supports the extension of injunctive relief to

12

future work). Given this statutory framework, courts routinely issue injunctive relief as part of a default judgment where, as here, an online media distribution system was used to download and distribute copyrighted works without permission. *See, e.g., Warner Bros. Records, Inc. v. Novak*, 2007 WL 1381748 at *2-3 (D. N.J. 2007) (issuing a permanent injunction enjoining Defendant from infringing on plaintiffs copyrighted recordings in the future).

Here, Plaintiff has demonstrated that there is a high likelihood of continuing violations of Plaintiffs copyright if Defendants are not enjoined. Because of the way the BitTorrent protocol operates, every downloader of the content is also an uploader; thus, the distributed nature of BitTorrent leads to a rapid, almost viral, spreading of a file through peer users. (Dkt. #14 ¶¶ 29-34). This also means that every user who has a copy of the infringing material may also be a source for *later* downloads of the material, so long as the first user remains part of the BitTorrent network and is online at the time a subsequent user requests the file. *(Id.)* Such widespread and uncontrolled infringement is, by its very nature, irreparable. Accordingly, unless this Court grants an injunction, Defendants will likely be the source for others to download the Movie over and over. Granting an injunction is the only want to prevent further infringement. Nor will Defendants be harmed if Defendants are enjoined from this conduct in the future-only *illegal* conduct will be prohibited.

For these reasons, Plaintiff respectfully requests that the Court grant Plaintiff injunctive relief prohibiting Defendants from directly and contributorily infringing Plaintiffs copyrighted Movie in the future. Additionally, Plaintiff requests that the Court order Defendants to destroy all copies of the Movie that Defendants made or used in violation of Plaintiffs copyright.

**VI. Plaintiff is entitled to an award of attorneys' fees and costs.**

Pursuant to 17 U.S.C. § 505, this Court may award reasonable attorneys' fees and costs

incurred in litigating a copyright infringement action-and courts typically do make such awards. "Plaintiffs in copyright actions may be awarded attorneys' fees *simply by virtue of prevailing in the action: no other precondition need be met,* although the fee awarded must be reasonable." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.,* 886 F.2d 1545, 1556 (9th Cir. 1989) (emphasis added). Indeed, *"an award of attorney's fees to the prevailing party in a copyright action is the rule rather than the exception and should be awarded routinely."* *Hunn v. Dan Wilson Homes, Inc.,* 789 F.3d 573, 588-89 (5th Cir.), cert.  *denied,* 136 S. Ct.  592, 193 L. Ed. 2d 470 (2015) (citation omitted) (emphasis added); *see also JMV Music, Inc. v. Cichran,* 00-4094-SAC, 2000 WL 1863478, at *3 (D. Kan. Nov. 16, 2000) (Awarding attorneys' fees also "serve[s] as an economic incentive for a copyright holder to use the courts in challenging an infringement.") It is worth noting that attorneys' fees can be awarded "for reasons other than simply making the plaintiff whole, such as encouraging the assertion of colorable copyright claims and deterring infringement." *Chi-Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1230 (7th Cir. 1991) (citing *McCulloch v. Albert E. Price, Inc.,* 823 F.2d 316,323 (9th Cir.1987)).

Here, Plaintiff seeks $2,695.00 in attorneys' fees, which are directly related to prosecuting this action against the Defendants. *(See* Declaration of Timothy A. Shimko, attached as Exhibit 2) In requesting these fees, Plaintiff has not sought to recover for the attorney time expended preparing and filing the original Complaint or the Amended Complaint, which asserted claims against multiple Doe defendants. Rather, it seeks time only for preparing the entry of default and this Motion for Default Judgment.

This request includes fees incurred for a total of 7 hours of work by Timothy A. Shimko

at a rate of $385 per hour.[6] *(Id.)*. These rates are reasonable because they are comparable to the rates charged by lawyers of reasonably comparable skills, experience, and reputation. *(Id.)*. In sum, had the client been paying hourly, the client would have been charged for 10 hours at a total cost of $2,695.00.

## VII. Conclusion

Plaintiff filed this lawsuit to protect its copyrighted movie from online piracy. It rationale is undisputed that Defendants willfully and intentionally infringed Plaintiffs copyright using the BitTorrent protocol. Defendants' blatant disregard of copyright laws warrants a significant statutory award, not only to protect Plaintiffs interest, but also to deter others from illegally downloading copyrighted movies using software like BitTorrent. As explained above, the damaging effects of online, peer-to-peer copyright infringement are widespread. Individuals utilizing the BitTorrent protocol to steal copyrighted material for their own benefit are doing it at society's detriment. Put bluntly, Defendants are playing a part in an online theft scheme that is (1) costing the movie industry billions of dollars each year, (2) damaging the U.S. economy through significant job loss, and (3) putting the Copyright Act's mission *(i.e.,* promoting science and the "useful Arts") at risk.

Accordingly, Plaintiff respectfully requests that the Court enter default judgment against Defendants and issue an award of statutory damages in the amount of $15,000.00 against each and, attorneys' fees in the amount of $2,695.00. Additionally, Plaintiff requests that the Court permanently enjoin Defendants from directly and contributorily infringing Plaintiffs copyrighted material, and order Defendants to destroy all copies of the copyrighted material. Finally, Plaintiff

---

[6] Plaintiff pays its counsel on a contingency basis, not hourly. But a request for attorneys' fees, calculated on a per-hour basis, is an appropriate lodestone for a fee request in contingency matters, and is wholly consistent with the rationale behind fee-shifting statutes like Section 505 of the Copyright Act. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), supplemented, 483 U.S. 711 (1987) (affirming an award of attorneys' fees based on reasonable hourly rates where the attorneys were working on contingency).

requests that the Court order Defendants to delete all software used to make, exchange or distribute copies of Plaintiff's copyrighted material using the BitTorrent protocol, and to refrain from knowingly and willfully using BitTorrent or the Internet for copying or downloading content in violation of U.S. copyright law.

A proposed Order granting the requested relief has been submitted herewith.

    Dated: August 25, 2017

                Respectfully Submitted,

                Timothy A. Shimko (0006736)
                Shimko Law Offices LLC
                Box 6985
                159 Crocker Park Blvd. Suite 400
                Westlake, Ohio 44145
                Tel. (216) 241-8300
                Fax (216) 539-2015
                tas@shimkolaw.com

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on August 28, 2017, the foregoing with a copy of the exhibits and proposed text order were served electronically through the Court's electronic ECF system and by regular U.S. Mail to:

Johnathan Toney
2019 Wilmich Dr.
Akron, OH 44319

Krystal Ramsey
26 E. Tallmadge Ave. Apt. 14
Akron, Ohio 44310

                Timothy A. Shimko